# Yoder *versus* Yoder.

F. settled upon land and died in possession, leaving his widow and minor child in actual possession. The *widow*, during the minority of her child, sold the improvement right to B., who took possession, and died leaving a widow and children. The widow of B. became married to Y., who went upon the land, and afterwards purchased from the child and heir of F., the settler. Y. afterwards sold to the plaintiff, his son.

In an ejectment by the son against Y. and his wife, and another in possession, it was *held* that the purchase by B. from the widow of F. gave to him no title as against the heir of F., and the possession by Y. was the continuance of a wrong against the said heir; that there was no obligation in F. to purchase for his wife and those with him in possession; and that his purchase from the heir of F. and his conveyance to the plaintiff, gave the latter title as against the wife of Y. and the family of B.; and that the wife of Y., although abandoned by her husband, could not, under the possession of F., her husband, maintain her possession of the land by virtue of the statute of limitations.

ERROR to the Court of Common Pleas of *Juniata county.*

This was an action of ejectment brought to February Term, 1851, for 135 acres of land, in which Benjamin Yoder was plaintiff, and Peter Yoder and Eleanor his wife, and William Burris, were defendants.

The evidence in the cause showed that the land was originally settled by George Fry about 1800. That he built a house, cleared some land, and lived there until his death, about 1806. He left a widow and one child nine years old, who continued to live upon the land until about 1813, when the widow sold out the improvement right to Peter Burris, who went upon the land and lived there until his death in 1824. In 1825 *Peter Yoder* married Eleanor, *the widow of Burris*, and went to live on the land, where the widow and children of Burris then were. On 7th April, 1827, Peter Yoder bought the land from John Stahl and wife, the latter being the only child and heir at law of George Fry, and got a deed for it; and on the 4th June, 1827, he sold and conveyed the land to Benjamin Yoder, the plaintiff below. The possession of Peter Yoder and his family, and of such of the Burris family as remained at home, has been continued up to this day. In 1814, *Peter Burris* obtained a warrant for the land and had it surveyed, but pursued the matter no further. In 1849 Benjamin Yoder applied for a warrant, and then Peter Yoder was one of his witnesses to prove the settlement, and testified that he had lived on the land as tenant of Benjamin since 1827.

On the trial it was contended on the part of the plaintiff that the Fry title *was abandoned.* 2. The purchase of Peter Yoder enured for the benefit of the widow's title. 3. That Peter Yoder had been in possession from 1827 till 1850, and the statute of limitations operated; and 4. That Fry had no title.

[Yoder *v.* Yoder.]

WATTS, J., charged that there was no evidence in the case that Fry had *abandoned* his title. He made a settlement and died on the land. His widow and child continued to live on the land till Burris purchased from the widow of Fry. The latter left the land, took her child with her, and gave the possession to Burris. There is in this no evidence of abandonment.

He also charged that *Peter* Yoder's purchase did not enure to the benefit of his wife. His purchase from the child of Fry gave him title, and his subsequent conveyance to his own son Benjamin Yoder, the plaintiff, vested the title in him. The wife of *Peter* Yoder, whose husband had left her, cannot claim possession by the statute of limitations. Verdict for plaintiff.

Error was assigned to the charge.

*Hepburn*, for plaintiff in error.—It was alleged on part of the plaintiff in error, that when Peter Yoder married the widow of Burris and entered upon the land, she was in the actual possession, claiming title as the estate of herself and her children. The purchase by Peter Yoder would enure to the benefit of his wife, and in favor of the title under which he entered.

The Court should have referred to the jury as to whether Peter Yoder held adversely or otherwise. After his deed to his son he continued to occupy the land, as he had occupied it before, for a period of 21 years, and he made no acknowledgment till March, 1849, when, as it was contended, he was intending to abandon his wife and transfer his estate to his son.

*Doty*, with whom was *R. C. Hale*, for defendant.—Fry never abandoned the improvement right, for he died in possession. His infant child could not abandon it : 5 *W. & Ser.* 284, Miller *v.* Cresson.

The opinion of the Court was delivered, June 17, by

LOWRIE, J.—Peter Yoder acknowledges the Fry title, that it is now owned by Benjamin Yoder, and that he is Benjamin's tenant. Under such circumstances, neither Peter nor any of his family can claim to have obtained a title by adverse possession.

The Fry title was good against all but the Commonwealth ; and Peter Burris got no shadow of title, as against the heir of Fry, when he bought from Fry's widow. And when Burris died, and Peter Yoder married his widow and continued the possession of the Burris family, he was continuing a wrong against the heir of Fry. When, therefore, Mrs. Stahl arrived at age and asserted her title as heir of Fry, it would have been wrong for Peter Yoder to resist her claim, either for the Burris family or for himself. Being in conscience bound to abandon a possession wrongfully held,

he was not under any kind of obligation to buy in the true title for the benefit of those who, with him, were holding in disregard of it; and there was nothing to prevent him from buying for himself. When he took the deed to himself, and then conveyed to Benjamin, he was distinctly asserting a purchase on his own account, and there is no evidence that he ever considered himself as holding for the Burris family. The Court below was therefore right in directing a verdict for the plaintiff.

Judgment affirmed.